UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-C5,<br><br>        Plaintiff,<br><br>   v.<br><br>CCC ATLANTIC, LLC,<br><br>        Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 12-521 (JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

DINSMORE & SHOHL LLP
By: Richard A. O'Halloran, Esq.
    Alyson H. Ricker, Esq.
502 Carnegie Center
Suite 103
Princeton, New Jersey 08540
    Counsel for Wells Fargo Bank, N.A. as Trustee

SILVERANG & DONOHOE, LLC
By: Mark S. Haltzman, Esq.
    Philip S. Rosenzweig, Esq.
595 East Lancaster Avenue
Suite 203
Saint Davids, Pennsylvania 19087
    Counsel for CCC Atlantic, LLC

**IRENAS**, Senior District Judge:

    This case is primarily a commercial foreclosure action. In November, 2012, this Court granted Plaintiff Wells Fargo's Motion to Appoint a Receiver to receive rents and manage the property at

issue (the Cornerstone Commerce Center in Linwood, New Jersey).[1] Wells Fargo now moves for summary judgment on its claims for foreclosure, possession, and personal property collateral against Defendant CCC Atlantic. CCC Atlantic opposes the motion, and also moves for reconsideration of this Court's opinion and order dismissing its amended counterclaims for breach of contract, breach of the duty of good faith and fair dealing, and tortious interference. Insofar as CCC Atlantic asserts Wells Fargo's alleged breaches both as an affirmative counterclaim, and as a defense to Wells Fargo's claims, it is appropriate to consider the two motions together.

For the reasons stated herein, Wells Fargo's Motion for Summary Judgment will be granted and CCC Atlantic's Motion for Reconsideration will be denied.

**I.**

The parties and the Court are quite familiar with the facts giving rise to this suit. This is the fourth opinion authored by the undersigned, and the magistrate judge assigned to this case, Judge Schneider, has authored two others. In anticipation of the

---

[1] The order actually appointing the receiver was not entered until February, 2013. The delay between the order granting the motion to appoint a receiver and the order actually appointing the receiver resulted from CCC Atlantic's attempt to appeal the receivership decision and then CCC Atlantic's bankruptcy filing. CCC Atlantic's Chapter 11 petition was dismissed without prejudice on February 8, 2013, and this Court entered the order appointing a receiver on February 15, 2013.

appeal that is likely to follow,[2] this Court will not further add to the volume of paper that will be the record on appeal. The previous opinions fully set the stage for the instant motions. *See Wells Fargo Bank, N.A., Trustee v. CCC Atlantic, LLC*, 905 F. Supp. 2d 604 (D.N.J. 2012); *Wells Fargo Bank, N.A., Trustee v. CCC Atlantic, LLC*, 2013 WL 595625 (D.N.J. Feb. 15, 2013); *Wells Fargo Bank, N.A., Trustee v. CCC Atlantic, LLC*, 2013 WL 5676203 (D.N.J. Oct. 17, 2013).

## II.

### A.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is

---

[2] According to the docket, CCC Atlantic has already attempted to take three separate interlocutory appeals and it presently asks this Court to certify the case for another interlocutory appeal. *See infra* n.8. Apparently, CCC Atlantic is anxious to take an appeal.

material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 252.

**B.**

A motion for reconsideration may only be granted on the ground that (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) that vacating the Order is necessary to correct a clear error of law or manifest injustice. *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

**III.**

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." *Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 394 (Ch. Div. 1993), *aff'd by* 273 N.J. Super. 542 (App. Div. 1994); *cf. Thorpe v. Floremoore Corp.*, 20 N.J. Super. 34, 37 (App. Div. 1952) *(*"Since the execution, recording, and non-payment of the mortgage were conceded, a prima facie right to foreclosure was made out."). The only element at issue here is whether Wells Fargo has a right to

foreclose on the property.[3]

It is undisputed that the Loan Documents give Wells Fargo the right to foreclose upon the property after an Event of Default. However, CCC Atlantic makes three arguments against Wells Fargo's contractual right to foreclose. First, that CCC Atlantic's defaults / breaches of the Loan Documents are excused by Wells Fargo's prior alleged breach; second, that its uncured tax escrow deficiency was not a default because the terms of the Loan Agreement were altered by the parties' course of conduct; and third, that Wells Fargo failed to mitigate its damages. The Court addresses each argument in turn.

**A.**

CCC Atlantic argues that its two defaults under the Loan Documents-- the uncured tax escrow account deficiencies, and its subsequent filing for bankruptcy[4]-- should be excused because,

---

[3] Wells Fargo does not presently seek a determination of the amount due under the Loan Documents. It requests a separate hearing to determine the amount due "together with any and all other amounts advanced by Plaintiff during the pendency of this action, [and] attorneys' fees and costs." Proposed Order granting the Motion for Summary Judgment.

[4] After this litigation began, CCC Atlantic filed a Chapter 11 bankruptcy petition in Delaware, but the case was later dismissed. *See Wells Fargo Bank, N.A. v. CCC Atlantic, LLC,* No. 12-521, 2013 WL 595625 at *2 (D.N.J. Feb. 15, 2013); *see also* Docket Entries #54 (Suggestion of Bankruptcy filed by CCC Atlantic LLC); #59 (Letter to Court from CCC Atlantic's counsel stating that the "Chapter 11 case was dismissed by Order of Judge Sontchi.").

5

prior to both of those events, Wells Fargo "failed to provide actual notice to CCC of the increased tax obligations and escrow deficiency created when Linwood submitted to Wells Fargo CCC's unabated tax bill . . . and when Wells Fargo paid the tax bill." (Opposition Brief p. 17) According to CCC Atlantic, Wells Fargo breached the Loan Agreement first, therefore CCC Atlantic's subsequent breaches are excused as a matter of law.

First, the Court has already held that under the Loan Agreement, Wells Fargo had no obligation to notify CCC Atlantic of either CCC Atlantic's own property tax obligations or Wells Fargo's actions with respect to the Tax Escrow account. *See* 2013 WL 5676203 at \*3-\*4.

CCC Atlantic argues that there are fact issues involved in making that decision, therefore the Court improperly dismissed the breach of contract claim on a 12(b)(6) motion. The Court disagrees. The Court's decision rested on the plain meaning of the contract and CCC Atlantic's own factual allegations. There was no clear error in that regard.

Second, to the extent CCC Atlantic now relies on documents outside the pleadings (namely, the Stambaugh Affidavit) to argue that it did give Wells Fargo notice of its increased property tax obligations, and therefore triggered Wells Fargo's notice obligation under Section 4.02(d) of the Loan Agreement[5], CCC

---

[5] *See* 2013 WL 5676203 at \*4 ("Moreover, Section 4.02(d) might require prior notice, but under circumstances not alleged

6

Atlantic has failed to sustain its burden on this issue. The Stambaugh Affidavit states that CCC Atlantic provided Wells Fargo's loan servicer, Berkadia, with "annual operating budgets which included data reflecting" the property tax increases. (¶ 9 and Ex. B) An annual operating budget is not the type of formal notice contemplated by Section 4.02(d).

The Court holds that CCC Atlantic has failed to raise a triable issue of material fact as to Wells Fargo's alleged breach of the Loan Agreement.[6] CCC Atlantic's first defense to foreclosure fails.

**B.**

CCC Atlantic also argues that the uncured Tax Escrow Account deficiency was not a default under the Loan Agreement because the terms of the agreement were altered by the parties' course of performance. This issue is mooted by CCC Atlantic's subsequent

---

here. If CCC Atlantic had advised Wells Fargo of the upcoming expiration of property tax abatements-- i.e., if CCC Atlantic had complied with the provision stating that "Borrower shall notify Lender immediately of any changes to the amounts ... of any Taxes"-- then perhaps Wells Fargo would have been required to notify CCC Atlantic of the deficiency and to allow CCC Atlantic to deposit sufficient funds into the Tax Escrow Account prior to payment of the 2011 tax bill. But CCC Atlantic never gave notice to Wells Fargo. Therefore, Wells Fargo's notice obligations in such a situation, whatever they may be, were never triggered.").

[6] CCC Atlantic's Motion for Reconsideration concerning its good faith and fair dealing counterclaim is premised on the same assertion that the annual budget constituted "notice" under Section 4.02(d). Therefore the good faith and fair dealing claim fails for the same reason as the breach of contract claim.

7

bankruptcy filing, which is undisputedly, an independent "Event of Default" under the Loan Agreement. (See Section 11.01(h))

CCC Atlantic's second defense to foreclosure fails.

### C.

Third, Wells Fargo's alleged failure to mitigate its damages does not negate its right to foreclose on the property, and therefore is not a valid defense to liability. Such issues are more appropriately addressed during the future hearing to determine the amount due under the Loan Documents.

To the extent CCC Atlantic reasserts its argument that Wells Fargo wrongfully rebuffed CCC Atlantic's proposal to cure the tax escrow deficiency, the Court reiterates its conclusion that Wells Fargo had no legal obligation to consider CCC Atlantic's "propos[al] to cure the [tax escrow] deficit 'over the course of the ensuing two (2) years'" when the Loan Agreement undisputedly obliges CCC Atlantic to cure the deficiency within ten days. 2013 WL 5676203 at *5.

CCC Atlantic's third defense fails as a matter of law.

### D.

Lastly, for clarity of the record, the Court addresses CCC Atlantic's assertions that this Court has not allowed it to develop, through discovery, the factual basis for its defenses and counterclaims. Anyone familiar with the long procedural history of

8

this case could not reasonably conclude that this litigation is in its "early stages" (CCC Atlantic's Opposition Brief, p. 13-14), or that this Court has prematurely concluded that Wells Fargo is entitled to foreclose on the property.[7]

This case began in January, 2012, when Wells Fargo filed a relatively straightforward complaint seeking to foreclose upon the property. A few months later, Wells Fargo sought the appointment of a receiver. In response, CCC Atlantic filed a Motion to Dismiss, raising a complicated factual (as opposed to facial) challenge to this Court's diversity jurisdiction. *See* 905 F. Supp. 2d 604, 610 (D.N.J. 2012).

When both the motion to appoint a receiver and the jurisdictional motion were decided against CCC Atlantic, it filed interlocutory appeals and moved to stay this case pending the appeals. Before the Court could decide the Motion to Stay however, CCC Atlantic filed for bankruptcy.

Approximately two months later, CCC Atlantic's Chapter 11 petition was dismissed upon Wells Fargo's motion in the bankruptcy court.

When the parties returned to this Court, CCC Atlantic renewed its Motion to Stay the case pending appeal, which this Court denied, but granted CCC Atlantic a temporary stay to seek a stay

---

[7] Such assertions notwithstanding, CCC Atlantic has not submitted an affidavit pursuant to Fed. R. Civ. P. 56(d) identifying what relevant facts it seeks to develop through additional discovery.

9

from the Court of Appeals. CCC Atlantic then sought an extension of time to submit its stay application to the Court of Appeals which this Court also denied.

Undeterred, CCC Atlantic took a different approach-- it filed a motion to amend the Court's order deciding the jurisdictional and receivership issues to include a certification for interlocutory appeal. The Court denied that motion as well.

After CCC Atlantic's first two interlocutory appeals were dismissed on March 5, 2013, the parties stipulated to an extension of time for CCC Atlantic to file its Answer.

On April 12, 2013, approximately one year and two months after the Complaint was filed, CCC Atlantic filed its Answer and Counterclaims. On April 16, 2013, Magistrate Judge Schneider entered a scheduling order extending pretrial factual discovery to September 30, 2013. Shortly thereafter, CCC Atlantic amended its Counterclaims, and Wells Fargo moved to dismiss those claims.

While the motion to dismiss the counterclaims was pending, CCC Atlantic filed a motion to add permissive third-party claims against two of Wells Fargo's special loan servicers and another party who provided a valuation of the property at issue. Notably, in denying that motion, Judge Schneider observed,

> Despite CCC Atlantic's efforts to complicate the case, this is a fairly straightforward foreclosure action. The proposed third-party complaint would unduly complicate the issues to be presented at trial and substantially delay the final resolution of the case. The pleading addresses matters that largely occurred

10

> after the alleged default occurred, and after Wells
> Fargo filed its complaint and are unrelated to whether
> CCC Atlantic defaulted on its loan. If the Court were
> to permit the joinder, what was once a relatively
> straightforward foreclosure action would devolve into
> a complicated morass involving multiple claims and
> parties. . . . Even if the Court assumed CCC Atlantic
> properly pleaded its third-party claims, which the
> Court is not deciding, the concomitant discovery is
> likely to be extensive and time consuming, and will
> inevitably lead to numerous discovery disputes and
> delays. This complication of claims at trial and the
> delay in the final resolution of Wells Fargo's
> foreclosure claims will unduly prejudice Wells Fargo.

(Docket Entry #122) (internal citation omitted).

Thus, apparently it has been CCC Atlantic's strategy to litigate as many non-merits issues as possible, and seek reconsideration of merits issues already decided, when it could have been pursuing the discovery it now asserts it needs.

CCC Atlantic has forestalled foreclosure for 21 months. While it has not succeeded on almost every legal issue raised-- whether raised here, in the bankruptcy court, or in the Court of Appeals-- is has succeeded in substantially delaying foreclosure. The Court will not allow further delay couched in the guise of further discovery.

**IV.**

In light of the foregoing, Wells Fargo's Motion for Summary Judgment as to liability will be granted, and CCC Atlantic's Motion

11

for Reconsideration will be denied.[8]  An appropriate Order accompanies this Opinion.


November 21, 2013                     s/ Joseph E. Irenas
                                    Joseph E. Irenas, S.U.S.D.J.

---

[8] CCC Atlantic's alternative motion to certify for interlocutory appeal this Court's order dismissing CCC Atlantic's counterclaims will also be denied.  The order and accompanying opinion do not involve a controlling question of law as to which there is substantial ground for difference of opinion.  28 U.S.C. § 1292(b).  Moreover, instead of "materially advancing the ultimate termination of the litigation," id., certification would have the opposite effect of further prolonging ultimate termination.

It should also be noted that the Court's disposition of Wells Fargo's motion for summary judgment does not moot the motion to certify because this Court has yet to adjudicate the amounts due Wells Fargo under the Loan Agreement.  Therefore, the order accompanying this opinion does not dispose of the entire case.