UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-C5,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CCC ATLANTIC, LLC,<br><br>　　　　Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 12-521<br>　　　(JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

DINSMORE & SHOHL LLP
By:  Richard A. O'Halloran, Esq.
     Alyson H. Ricker, Esq.
502 Carnegie Center
Suite 103
Princeton, New Jersey 08540
     Counsel for Wells Fargo Bank, N.A. as Trustee

SILVERANG & DONOHOE, LLC
By:  Mark S. Haltzman, Esq.
     Philip S. Rosenzweig, Esq.
595 East Lancaster Avenue
Suite 203
Saint Davids, Pennsylvania 19087
     Counsel for CCC Atlantic, LLC

**IRENAS**, Senior District Judge:

　　This is a commercial foreclosure action.  On November 22, 2013, the Court granted Wells Fargo's Motion for Summary Judgment on liability only, holding that Wells Fargo is entitled to foreclose upon the Cornerstone Commerce Center in Linwood, New

Jersey.

Presently before the Court is Wells Fargo's application for a determination of amounts dues under the Loan Agreement, which the Court treats as a motion for summary judgment. Oral argument was held on February 20, 2014, and the following day Wells Fargo filed supplemental materials in response to issues raised at argument. For the reasons stated herein, the motion will be granted.

**I.**

The parties and the Court are quite familiar with the facts giving rise to this suit. Prior opinions may be found at *Wells Fargo Bank, N.A., Trustee v. CCC Atlantic, LLC*, 2013 U.S. Dist. LEXIS 167325 (D.N.J. Nov. 21, 2013); *Wells Fargo Bank, N.A., Trustee v. CCC Atlantic, LLC*, 2013 WL 5676203 (D.N.J. Oct. 17, 2013); *Wells Fargo Bank, N.A., Trustee v. CCC Atlantic, LLC*, 2013 WL 595625 (D.N.J. Feb. 15, 2013); and *Wells Fargo Bank, N.A., Trustee v. CCC Atlantic, LLC*, 905 F. Supp. 2d 604 (D.N.J. 2012).

The principal amount of the interest-only loan is $41 million. A few months after origination, the loan was bifurcated into an A Note and a B Note, with principal amounts of $36.9 million and $4.1 million respectively.[1]

---

[1] Wells Fargo holds the A Note. Capmark Bank holds the B Note. However, as discussed in this Court's prior opinion, Capmark and Wells Fargo have entered into a "Co-Lender Agreement" which grants Wells Fargo exclusive rights to pursue this suit with respect to both Notes. *See* 905 F. Supp. 2d 604, 613-14 (D.N.J. 2012).

As to the B Note, Wells Fargo seeks only the principal, "regular interest" (i.e., the contract rate of 5.87%), and default interest.

As to the A Note, Wells Fargo seeks those same items as well as "prior default interest" for one month (September 1, 2011 to October 1, 2011), "an amount equal to Prepayment Premium," and Property Protection Advances.

CCC Atlantic disputes the assessment of default interest and the prepayment fee.[2]  CCC also asserts that Wells Fargo's damages should be limited because of Wells Fargo's failure to mitigate its damages.

## II.

The summary judgment standard stated in *Wells Fargo Bank, N.A., Trustee v. CCC Atlantic, LLC*, 2013 U.S. Dist. LEXIS 167325 (D.N.J. Nov. 21, 2013) is incorporated herein by reference.

## III.

Before turning to the amounts due, the Court must address the date of CCC's default under the Loan Agreement.

---

[2] At oral argument the attorneys for both parties stated that they had reached an agreement as to Property Protection Advances.  That issue is now moot.

3

**A.**

The Court has already ruled that CCC Atlantic defaulted under the Loan Agreement. In reaching that conclusion, however, it was not necessary to decide whether the default was the uncured tax escrow deficiency or the bankruptcy filing. Whether the default occurred in 2011 (when the uncured tax escrow deficiency occurred) or in 2012 (when CCC filed for bankruptcy) does not affect the issue of whether Wells Fargo is entitled to foreclose, it only affects the calculation of the amounts due.

Wells Fargo's present calculations assume that the default occurred in 2011. CCC argues that a default did not occur in 2011 because the parties' course of performance altered the terms of the parties' contract.

It is undisputed that over the five years in which the property tax abatements were in effect, Linwood billed CCC directly and Wells Fargo did not pay the property taxes on CCC's behalf. CCC argues that this practice was sufficient to alter the terms of the Loan Agreement, and therefore CCC did not default in 2011.

CCC's argument fails. The Event of Default under the Loan Agreement was not that Wells Fargo paid the tax bill, or even that a tax escrow deficiency resulted. The Event of Default was CCC's failure to timely cure the deficiency. At all times it was CCC's

responsibility under the Loan Agreement to pay its property taxes. All of the record evidence suggests that even if, consistent with previous practice, Linwood had sent the unabated tax bill directly to CCC, CCC still would not have been able to pay the entire unabated bill; Wells Fargo, in order to protect its collateral, would have paid the difference, and the parties would be in the exact position they are now.

Accordingly, the Court holds that CCC's "course of performance" argument fails and that CCC defaulted in 2011 when it failed to timely cure the tax escrow deficiency.

**B.**

CCC argues that the default interest rate-- which is an additional 4% on top of the contract interest rate of 5.87%-- is unreasonable.  CCC asks the Court "to void the default interest provision of the Loan Agreement and refrain from awarding default interest to Wells Fargo."  (Opp. Br. P. 16)

The New Jersey Supreme Court has stated that default interest provisions in commercial mortgages "are presumed reasonable." *MetLife Capital Financial Corp. v. Washington Avenue Assoc.*, 159 N.J. 484, 501 (1999); *see also MONY Life Ins. Co. v. Paramus Parkway Building, Ltd.*, 364 N.J. Super. 92, 103 (App. Div. 2003).

5

Thus, CCC must prove the default interest unreasonable.  CCC has not met its burden.

The 4% increase does not suggest "punitive intent." *MetLife*, 159 N.J. at 501.  Moreover, CCC has failed to introduce any evidence suggesting that the 4% increase is not "a reasonable estimate of the potential costs of administering the defaulted loan."  *Id.*

Accordingly, the Court holds the default interest reasonable and therefore enforceable.

### c.

CCC acknowledges that the Loan Agreement imposes a "Prohibited Prepayment Fee" even when an Event of Default has occurred and the debt is accelerated (i.e., even when the prepayment is involuntary).  Nonetheless, CCC argues that the Court should void the prepayment provision as "grossly unfair" and "unconscionable."

New Jersey courts have held prepayment clauses in commercial mortgages "valid and enforceable" even when the lender accelerates the debt.  *MONY Life Ins. Co.*, 364 N.J. Super. at 105.  Like the default interest rate analysis, CCC has the burden of proving that the prepayment fee is unreasonable.  *Id.*

CCC argues that the prepayment fee is unreasonable because CCC did not voluntarily prepay the debt, rather its prepayment is involuntary.  That fact alone however, does not render the prepayment fee unreasonable.  Indeed, *MONY Life Insurance* holds the opposite: "the loan document clearly and unambiguously provides that upon default the lender could both accelerate the debt and collect the prepayment fee.  This clause is valid and enforceable under New Jersey law."  364 N.J. Super. at 105; *see also Westmark Commercial Mortg. Fund IV v. Teenform Associates, L.P.*  362 N.J. Super. 336, 347 (App. Div. 2003)("While there is a certain ineluctable logic to the statement that payment after acceleration cannot be considered prepayment, we can perceive no reason why the debtor should be relieved of the terms of the contract freely entered into.").

CCC has not put forth any evidence that the prepayment fee is unreasonable.  The Court holds the fee reasonable.

**D.**

Lastly, CCC argues that Wells Fargo failed to mitigate its damages when it refused to accept CCC's proposal to cure the tax escrow deficiency over the course of two years.  This argument fails because no reasonable factfinder could conclude that CCC's proposal was a reasonable substitute transaction.

7

A non-breaching party is only required to take reasonable steps to limit its damages. *Ingraham v. Trowbridge Builders*, 297 N.J. Super. 72, 83 (App. Div. 1997). The duty to mitigate does not require an injured party to take steps that would subject it to "undue risk or burden." *Id.*

Wells Fargo had no duty to accept CCC's proposal. As this Court discussed previously, CCC's proposal to cure the default over two years (instead of ten days, as the Loan Agreement provided) came in a letter wherein "CCC admitted, 'the need to make rent and other leasing concessions to attract and keep quality tenants has had a significant impact on [CCC's] current cash position. CCC does not have the cash flow to make up this deficiency in a lump sum payment.'" 905 F. Supp. 2d at 609. Given CCC's *admitted* precarious financial position, Wells Fargo was not required to undertake the financial risk involved in CCC's proposal.

Moreover, CCC's arguments that Wells Fargo had a duty to "discuss" other, unspecified "alternate arrangements" and-- contrary to the provisions of the Loan Agreement-- credit CCC's partial payments[3] to the tax escrow account fail for similar reasons. The undisputed evidence demonstrates that CCC could not pay its bills as they came due. It would be a strange result

---

[3] CCC paid Wells Fargo $30,000.00 in September, 2011 and another $30,000.00 in October, 2011. (Karman Aff. ¶ 22) However, the deficit in the tax escrow account-- created in August, 2011 when Wells Fargo paid the tax bill-- was $272,385.67. (Id. at ¶ 19)

indeed, if, under such circumstances, the Court held that CCC could re-write the terms of its contract with Wells Fargo to get a better deal than the one it bargained for.  No factfinder could find any of CCC's proposed mitigation steps reasonable.  Accordingly, Wells Fargo's motion for summary judgment will be granted as to this issue.

## IV.

In light of the foregoing, Wells Fargo's Motion for Summary Judgment will be granted.  An appropriate Order accompanies this Opinion.

February 27, 2014                    s/ Joseph E. Irenas
                                     Joseph E. Irenas, S.U.S.D.J.

9